**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHLEY MAHONE, Individually and as Administratrix of the ESTATE OF CHRISTOPHER IAN RAUL, | : : : : | Civil No. 1:23-CV-01935 |
| Plaintiff, | : : | |
| v. | : : | |
| JOHNSON CONTROLS, INC., *et al.*, | : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is the renewed motion to dismiss for lack of personal

jurisdiction filed by Defendant Johnson Controls International PLC ("JCI PLC").

(Doc. 37.)  Because the court finds that it does not have personal jurisdiction over

JCI PLC, the motion to dismiss will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Ashley Mahone ("Mahone"), Individually and as Administratrix of

the Estate of Christopher Ian Raul, is an adult resident of New Freedom,

Pennsylvania.  (Doc. 39-3, p. 5.)[2]  Christopher Ian Raul ("Raul") was the son of

Mahone and an employee at the HVAC manufacturing facility located at 100 JCI

---

[1] The court compiles the following factual background from Mahone's complaint, Doc 39-3. The facts relevant to the determination of personal jurisdiction are discussed in detail in the relevant discussion section below.

[2] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

Way, York, Pennsylvania 17406 ("York Facility"). (Doc. 39-3, p. 10.) In October 2021, Raul died from fatal injuries when he was crushed to death by four industrial fans at the York Facility ("the Accident"). (*Id.*) Mahone filed a complaint against the following entities: Johnson Controls, Inc., York International Corporation, Johnson Controls International PLC, and Columbus McKinnon Corporation (collectively "Defendants"). (*Id.* at 5–6.) Mahone brought claims of negligence and wrongful death against all Defendants as well as claims of strict liability and breach of warranty against Columbus McKinnon Corporation. (*Id.* at 17–29.)

Mahone initiated this action by filing a complaint in the Court of Common Pleas for York County, Pennsylvania on October 17, 2023. (*See* Doc. 39-3.) On November 22, 2023, York International Corporation removed the case to this court based on diversity jurisdiction under 28 U.S.C. § 1441. (Doc. 1.) JCI PLC filed a motion to dismiss for lack of personal jurisdiction on November 29, 2023, and a brief in support on December 1, 2023. (Docs. 3, 8.) On December 11, 2023, Mahone requested leave to conduct jurisdictional discovery. (Doc. 9.) After both motions were briefed, the court ordered the parties to conduct jurisdictional discovery. (Docs. 29, 30.)

Thereafter, JCI PLC filed a renewed motion to dismiss for lack of personal jurisdiction and brief in support on December 2, 2024. (Docs. 37, 38.) Mahone and Defendant Columbus McKinnon Corporation ("McKinnon") each filed a brief

2

in opposition to this renewed motion to dismiss on December 16, 2024.  (Docs. 39, 40.)  The motion is ripe for review.

## JURISDICTION

This action was properly removed to this court under 28 U.S.C. § 1441. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.  Venue is proper under 28 U.S.C. § 1391.

## STANDARD OF REVIEW

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  In cases where jurisdictional discovery has been conducted, "[Plaintiff] need only assert a prima facie case for personal jurisdiction over [Defendant] and all disputed facts must be viewed in the light most favorable to Plaintiff.  However, the prima facie case must be based on evidence of specific facts in the record."  *Hooper v. Safety-Kleen Sys., Inc.*, No. 2:16-CV-123, 2016 WL 7212586, at *3 (W.D. Pa. Dec. 13, 2016).

A federal court sitting in Pennsylvania in a diversity suit exercises personal jurisdiction according to the law of Pennsylvania.  Fed. R. Civ. P. 4(k)(1)(A); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  The

Pennsylvania long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 PA. CON. STAT. § 5322(b).

The Due Process Clause protects individuals from "being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a forum state's ability to exercise personal jurisdiction over a defendant depends on that defendant "hav[ing] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). From these principles, two theories of personal jurisdiction have emerged: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021).

General personal jurisdiction is established when a defendant has "continuous and systematic" contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, (1984)). Specific personal jurisdiction may be established if the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged

injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

**DISCUSSION**

JCI PLC asserts that this court does not have general or specific personal jurisdiction over it.

## A. General Personal Jurisdiction

General personal jurisdiction over a foreign corporation is established when that corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, JCI PLC argues that this court does not have general jurisdiction over it because "JCI PLC is an Irish company with its principal place of business in Cork, Ireland" and "JCI PLC did not register to do business in Pennsylvania [nor] consent[ed] to jurisdiction in Pennsylvania." (Doc. 38, p. 12.) Mahone does not dispute this. Accordingly, the court finds that it does not have general jurisdiction over JCI PLC.

**B. Specific Personal Jurisdiction**

The Due Process Clause protects defendants from being subject to judgments in fora in which they lack meaningful contacts. *Int'l Shoe*, 326 U.S. at 319. Specific personal jurisdiction allows for a court to exercise jurisdiction over a defendant that is "less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mount. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021). The requirements for specific jurisdiction aim to afford some predictability for defendants to know when they may be held liable to suit in a certain jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The traditional test for specific personal jurisdiction consists of a three-part analysis: (1) whether defendants purposely directed their activities at the forum; (2) whether the claims arise out of or relate to the activities directed at the forum; and (3) whether assertion of jurisdiction "comports with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (3rd Cir. 2007) (quoting *Burger King Corp.*, 471 U.S. at 476). The third prong of fair play and substantial justice need only be considered if the first two prongs are met. *Id.* This analysis is generally claim-specific, because specific personal jurisdiction arises from a relationship between a defendant's forum-state contacts and the claims. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3rd Cir. 2001).

6

JCI PLC argues that this court does not have specific personal jurisdiction over it because it does not maintain a principal place of business in Pennsylvania, does not conduct business in Pennsylvania, and is not registered to do business in Pennsylvania. (Doc. 38, pp. 13–14.) Additionally, JCI PLC asserts it "does not manage or operate the York Facility" and "the only contact between JCI PLC and the York Facility occurred more than three years prior to the Accident," claiming that contact had nothing to do with the Accident. (Doc. 38, p. 15.) Mahone responds that JCI PLC had sufficient contacts with Pennsylvania for six reasons: (1) JCI PLC implemented and controlled safety functions at the York Facility; (2) JCI PLC participated in the OSHA investigation of the Accident; (3) JCI PLC provided workers' compensation insurance for employees at the York Facility; (4) JCI PLC posts available jobs on their website citing JCI PLC as the employer; (5) JCI PLC directed corporate statements to the York facility; and (6) JCI PLC's visit three years prior was related to the Accident. (Doc. 39, pp. 2–3.)

### 1. Purposeful Availment and Sufficient Minimum Contacts

The minimum contacts analysis asks whether the defendant purposefully directed sufficient activities at the forum state. In reviewing this issue, the court should consider whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King Corp.*, 471 U.S. at 474 (citing *Int'l Shoe*, 326 U.S. at 316). The minimum contacts must be purposefully directed at the

forum state in such a way that the defendant deliberately interacted with the forum state or created "continuing obligations" between itself and residents of the forum state. *Id.* at 475–76. This is often referred to as the "purposeful availment" requirement. *Id.* at 475.

The Third Circuit has held that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). While physical entrance is not required, a deliberate targeting of the forum is necessary. *Id.* at 317. Here, Mahone alleges several instances where JCI PLC has not only targeted the forum, but also physical entered Pennsylvania.

### i. Implementing and Controlling Safety Functions

First, Mahone contends that JCI PLC was responsible for "implementing and controlling safety functions at the subject facility." They reference two examples: the Process for Violation of Safety Rules Policy and the Zero Harm Vision. (Doc. 39, pp. 11, 14, 23.)

### a. First Document– Process for Violation of Safety Rules Policy

JCI PLC first addresses the Process for Violation of Safety Rules Policy, stating that it contained "a clerical error" that had not appeared on any other safety policies applicable to the York Facility, including policies related to the Accident. (Doc. 43, p. 11.) JCI PLC also refutes Mahone's claim by noting that those

8

involved in preparing and approving the policy were not directors or officers of JCI PLC. (*Id.*)  Mahone responds that this policy is indicative of JCI PLC's involvement because it "contains trade secrets and proprietary information" of JCI PLC, was issued by the company's "'Global HR and Labor' vice president," relates to safety of the York Facility, and was provided to Raul in York, Pennsylvania. (Doc. 39, pp. 14–15.)

JCI PLC does not contest that the document states that it "contains trade secrets and proprietary information of Johnson Controls, Intl. Plc." (Doc. 39-8, p. 2.)  However, JCI PLC maintains that this was a clerical error. (Doc. 43, p. 11.)  JCI PLC likewise does not contest Mahone's other claims regarding this policy, but takes the position that JCI PLC was not the one to create, approve, or implement it. (*Id.*)  In order for Mahone to sustain a *prima facie* case, the assertions must be "based on evidence of specific facts in the record." *Hooper*, 2016 WL 7212586, at *3.

Beyond Mahone's citations to the Process for Violation of Safety Rules Policy, Mahone fails to provide any additional evidence as to the specific claim that the policy "was provided to [Raul] in York, Pennsylvania. (Doc. 39, p. 15.)  This evidence is required to prove that JCI PLC "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317.  In *O'Connor*, the defendant company mailed brochures and traded phone

calls directly with the plaintiffs at their Pennsylvania home to form an agreement for rendering spa services. *Id.* at 318.  Here, Mahone provides no evidence that the policy was provided to Raul from JCI PLC.

But even if the policy was provided to Raul, JCI PLC has provided sufficient evidence that it was not responsible for this policy.  (Doc. 43, p. 11.)  JCI PLC uses deposition testimony of Richard Dancy ("Dancy"), Vice President, Associate General Counsel and Corporate Secretary of JCI PLC in support of its claim.  (*Id.*)  Dancy states that the reference to JCI PLC in the footnote was likely a "clerical error" that was not consistent with other similar policies.  (Doc. 39-9, p. 39.)

Similarly, Mahone uses the Process for Violation of Safety Rules Policy, as evidence that the policy was issued by the company's "'Global HR and Labor' vice president."  (Doc. 39, pp. 14–15.)  This fact is not contested by JCI PLC.  JCI PLC instead contends that the people in these positions were not employed by JCI PLC. The Third Circuit Court of Appeals has previously held that in cases where a subsidiary is the agent of a parent corporation or the parent exercises control over the subsidiary, "personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary," otherwise called an alter-ego analysis. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018).  Thus, to satisfy personal jurisdiction, Mahone needs to show that, because the policy was issued by the company's Global HR and Labor vice

10

president, this is indicative of either the subsidiary as an agent of the parent or that the parent exercises control over the subsidiary. Another Third Circuit case utilizes a ten-factor test to evaluate the relationship between a parent and subsidiary for the purpose of the alter-ego analysis. *Gasbarre Prods., Inc. v. Diamond Auto. Grp. Fla., Inc.*, No. CV 3:16-53, 2017 WL 1102652, at *4 (W.D. Pa. Mar. 23, 2017). The tenth factor is whether "the parent exercises control or provides instruction to the subsidiary's officers and directors." *Id.*

If the Global HR and Labor vice president were employed by JCI PLC, this would likely be an example of the parent providing instructions–here, the safety policy–to the subsidiary for enforcement. However, Mahone failed to provide any evidence establishing this fact. On the other hand, JCI PLC provided evidence from Dancy's testimony stating that all positions with the ability to create, approve, or implement this policy were employed at the subsidiary level, not by JCI PLC. (Doc. 39-9, p. 17.) Accordingly, Mahone fails to satisfy the first prong for specific personal jurisdiction in regards to the Process for Violation of Safety Rules.

### b.  Second Document–Zero Harm Vision

Mahone also asserts that the Zero Harm Vision was an example of how JCI PLC "implement[ed] and control[ed] safety functions at the subject facility." (Doc. 39, p. 23.) JCI PLC refutes this assertion, stating that the Zero Harm Vision

is more of a value statement applicable to over 700 subsidiaries.  (Doc. 43, p. 12.)

However, Mahone claims that the wording of the policy is indicative of JCI PLC's

upfront involvement at local manufacturing facilities: "We require each of our

locations to perform regular safety audits to ensure proper safety policies . . . ." and

these standards address "the specific hazard and unique working environments of

our manufacturing . . . ."  (Doc. 39, p. 15.)

JCI PLC does not contest the wording of this policy, but maintains that the

Zero Harm Vision is a value statement applicable to all subsidiaries.  (Doc. 43 p.

12.)  Mahone offers no additional argument in support of the claim that JCI PLC

implements and controls safety functions at the York Facility, other than the

wording of the Zero Harm Vision.  (Doc. 39-10, p. 5.)  This is simply not sufficient

to sustain a "prima facie case… based on evidence of specific facts in the record."

*Hooper*, 2016 WL 7212586, at *3.

Finally, JCI PLC provides further argument regarding the alter-ego analysis

in its renewed motion to dismiss.  (Doc. 38, pp. 17–21.)  However, Mahone only

addresses this argument in a footnote.  The Third Circuit has previously held that,

"arguments raised in passing (such as, in a footnote), but not squarely argued, are

considered waived." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d

1070, 1076 (3d Cir. 1997).  Accordingly, Mahone's brief argument as to an alter-

ego analysis is considered waived and the court will not address this issue further.

Thus, Mahone fails to satisfy the first prong for specific personal jurisdiction in regards to the Zero Harm Vision.

### ii.    Participation in OSHA Investigation

Second, Mahone alleges that the Occupational Safety and Health Administration ("OSHA") cited JCI PLC for safety violations and that JCI PLC actively participated in OSHA's six-month investigation.  (Doc. 39, p. 10.)  JCI PLC first addresses OSHA's citation for safety violations, claiming that the citation was incorrect.  (Doc. 43, p. 20.)  Mahone responds that JCI PLC, "at no point… object[ed] to or contest[ed] the designation of JCI PLC as the 'Establishment Name,' 'Company Name,' or 'Employer' all of which it was referred to as by OSHA."  (Doc. 39, p. 13.)  Likewise, Defendant Columbus McKinnon Corporation argues "there is no indication of a filing or attempt by JCI PLC or one of its subsidiaries to correct the OSHA record . . . ."  (Doc. 40, pp. 2–3.)

Here, there is a material fact in dispute regarding OSHA's citation of JCI PLC for safety violations and whether the citation was a mistake.  In order for Mahone to sustain a *prima facie* case, assertions must be "based on evidence of specific facts in the record."  *Hooper*, 2016 WL 7212586, at *3.  Here, Mahone provided specific evidence in the record acknowledging that JCI PLC never objected to or contested OSHA's citation, nor, as McKinnon pointed out, made an

effort to correct the record.  (Doc. 39, p. 13; Doc. 40, pp. 2–3.)  Thus, "all disputed facts must be viewed in the light most favorable to Plaintiff."  *Hooper*, 2016 WL 7212586, at *3.

But even assuming OSHA correctly identified JCI PLC on this documentation, this evidence alone still fails to satisfy the first prong regarding purposeful availment for two reasons.  First, OSHA's identification of JCI PLC as the employer has no legal significance in this case in considering whether an employer-employee relationship actually exists.  *See Grimsley v. Manitowoc Co.*, 675 Fed. App'x 188, 121 (3d Cir. 2017).  Mahone also fails to provide any other support that there was an employer-employee relationship between JCI PLC and the York Facility.  As previously stated, because Mahone failed to properly address JCI PLC's alter-ego analysis, the argument was waived.  Additionally, Mahone's own brief in opposition acknowledges that Raul's actual employer was York International Corporation because this was the company listed as his employer on Raul's W-2 forms.  (Doc. 39, p. 14.)

Secondly, OSHA's "unilateral activity… is not enough" to establish JCI PLC's "deliberate targeting in the forum."  *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 648 (M.D. Pa. 2016); *O'Connor*, 496 F.3d at 317.  Rather, specific personal jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Here,

simply because OSHA cited JCI PLC, potentially characterizing them as responsible for the Accident, this is not sufficient for the court to conclude that JCI PLC purposefully availed itself of business in York, Pennsylvania. Rather, a finding of specific personal jurisdiction can only be found using evidence of contacts that JCI PLC itself created with Pennsylvania.

Mahone further asserts that JCI PLC actively participated in OSHA's six-month investigation because JCI PLC was represented by counsel and responded to the OSHA subpoena. JCI PLC refutes this, stating that they were not represented by counsel but rather routed the matter to its subsidiary for resolution. (Doc. 43, p. 22.) Mahone cites a letter from Foley & Lardner LLP to OSHA as evidence that JCI PLC was represented by Foley & Lardner LLP, and therefore responded to OSHA's subpoena. (Doc. 39, p. 2.)

Here, Mahone's evidence confirms that Foley & Lardner LLP responded to OSHA's subpoena, "Pursuant to your request, we are forwarding the enclosed flash drive related to OSHA's subpoena *dues tecum* dated October 28, 2021." (Doc. 39-6, p. 2.) JCI PLC does not dispute this; however, there is a material dispute as to whether Foley & Lardner LLP represented JCI PLC in the OSHA investigation. Mahone provides no other evidence to show that Foley & Lardner LLP represented JCI PLC. JCI PLC rather asserts that Foley & Lardner LLP represented JCI not JCI PLC, citing Foley & Lardner LLP's email to Shawn Renaldi on October 26, 2021

as evidence.  (Doc. 43, p. 22.)  Upon review of this evidence, the court agrees with

JCI PLC.  In the email, Foley & Lardner LLP confirms they "ha[ve] been retained

to represent Johnson Controls, Inc. (JCI) with respect to the above-referenced

OSHA investigation."  (Doc. 43-4, p. 2.)  Additionally, the subject of the email is

listed as "Johnson Controls, Inc. – OSHA Fatality Investigation."  (*Id.*)

Given that the evidence confirms Foley & Lardner LLP represented JCI, not

JCI PLC and Mahone cites no other evidence to suggest the opposite, it is clear to

the court that JCI PLC was not represented by Folely & Lardner LLP.  As such,

any correspondence from Foley & Lardner LLP, including their response to

OSHA's subpoena, was on behalf of JCI and not JCI PLC. Thus, Mahone fails to

satisfy the first prong for specific personal jurisdiction based on the OSHA

investigation.

### iii.    Workers' Compensation Insurance

Third, Mahone claims that JCI PLC provided workers' compensation

insurance for the York Facility.  (Doc. 39, p. 14.)  JCI PLC responds that they have

no role in providing workers' compensation insurance.  (Doc. 43, p. 17.)  Mahone

cites a letter from a Claims Examiner for Sedgwick confirming that Sedgwick

administers workers' compensation claims "on behalf of Johnson Controls

International, PLC."  (Doc. 39-7, p. 2.)

Here, there is a material fact in dispute as to whether the claims examiner for Sedgwick mistakenly mentioned that Sedgwick administers workers' compensation claims "on behalf of Johnson Controls International, PLC." (Doc. 39-7, p. 2.) Mahone provided specific evidence in the record pointing to the letter from Sedgwick that Sedgwick administers workers' compensation claims "on behalf of Johnson Controls International, PLC." (Doc. 39-7, p. 2.) This fact is viewed in the light most favorable to Plaintiff. *See Hooper*, 2016 WL 7212586 at *3.

However, even assuming that the claims examiner correctly identified JCI PLC in its letter, a letter simply mentioning JCI PLC does not establish "deliberate targeting in the forum" since specific personal jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State" and "unilateral activity… is not enough." *O'Connor*, 496 F.3d at 317; *Walden*, 571 U.S. at 284; *Baker*, 210 F. Supp. 3d at 642. Here, the claims examiner's characterization of JCI PLC is not sufficient for this court to conclude that JCI PLC purposefully availed itself of business in York, Pennsylvania. Rather, a finding of specific personal jurisdiction can only be found using evidence of contacts that JCI PLC itself created with Pennsylvania.

Further, a parent company providing a subsidiary company's workers compensation insurance would only give rise to specific personal jurisdiction by

17

satisfying an alter-ego analysis, where a subsidiary is the agent of a parent corporation or where the parent exercises control over the subsidiary. *Shuker*, 885 F.3d at 781. For this argument to succeed in the present case, Mahone needed to demonstrate how the Sedgwick letter establishes the subsidiary as an agent of the parent or how the parent exercises control over the subsidiary. Because Mahone failed to even raise this argument, this argument is waived and Mahone fails to satisfy the first prong for specific personal jurisdiction based on the workers' compensation insurance.

### iv.    Online Job Postings

Mahone's next assertion is that JCI PLC maintains a presence in Pennsylvania based on "its websites for available jobs at the facility in York, Pennsylvania that identify JCI PLC as the employer." (Doc. 39, p. 3.) JCI PLC claims that they have no control over the website containing the job postings and that the website does not target Pennsylvania, but lists jobs across 2,000 locations throughout 150 countries. (Doc. 43, pp. 24–25.) Mahone cites the Equal Opportunity & Non-Discrimination disclaimer at the bottom of the webpage as evidence of JCI PLC's control over the website, "Johnson Controls International plc is an equal employment opportunity and affirmative action employer . . . ." (Doc. 39-12, p. 11.)

JCI PLC does not dispute that the website contains this disclaimer; however, there is a material dispute as to whether JCI PLC has control over the website and makes those job postings.  Here, Mahone provided specific evidence citing the disclaimer on the bottom of the webpage and this fact is viewed in the light most favorable to Plaintiff.  (Doc. 39-12, p. 11.)  However, even assuming that JCI PLC did have control over the website, this would still be insufficient evidence for JCI PLC to have purposefully availed itself of business in York, Pennsylvania.  The Third Circuit has held that simply because a parent and subsidiaries share a common website, that is insufficient for a court to exercise personal jurisdiction over the parent.  *Hoffman v. Tyco Int'l, Ltd.*, No. CIVA 06-2961, 2006 WL 3759709, at *1 (E.D. Pa. Dec. 18, 2006).  Accordingly, even if JCI PLC exercised control over the employment website, this would still be insufficient to establish purposeful availment by JCI PLC in Pennsylvania.

### v.    Corporate Statements Directed Towards York Facility

Mahone cites two consolidated corporate disclosure reports to support the argument that JCI PLC satisfies the first prong required for specific jurisdiction: JCI PLC's 2021 Sustainability Report and 2022 Non-Financial Disclosure Report. (Doc. 39, p. 15.)  JCI PLC addresses these documents in the aggregate claiming consolidated corporate annual statements do not suffice for the purposeful availment prong of specific personal jurisdiction.  (Doc. 43, p. 13.)

19

Mahone lists specific reasons in regards to each corporate disclosure, examining how each document satisfies this first prong.  (Doc. 39, pp. 15–18.) With regard to the 2021 Sustainability Report, Mahone outlines several aspects of the report that are indicative of JCI PLC's purposeful availment in York, Pennsylvania: (1) global initiatives for safe working conditions, (2) efforts to collect data regarding workplace safety, (3) the use of standard US-OSHA recordkeeping rules, (4) company-wide policies that are supported by local, regional, and site-specific employee health and safety, (5) training requirements, (6) regular safety auditing process, (7) health and safety reports from each subsidiary, (8) safety committees used to ensure safe working conditions at local facilities, and (9) software to report and track work-related injuries.  (Doc. 39, pp. 15–18.)  JCI PLC does not address each of these aspects individually.  Rather, JCI PLC responds in the aggregate stating that these factors are indicative of the "investor facing" quality of the report.  (Doc. 43, p. 13.)

JCI PLC argues that these examples in the report do not establish JCI PLC's purposeful availment of business in York, Pennsylvania.  The Third Circuit has held that consolidated information for reporting purposes is not indicative that the parent company exercised daily control over the subsidiary, subjecting the parent to specific personal jurisdiction.  *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. CV 19-2642-KSM, 2022 U.S. Dist. LEXIS 18444, at *24 (E.D. Pa. 2022).  The

Third Circuit has likewise held that gathering information about corporate performance typifies standard parent-subsidiary interactions. *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 386 (M.D. Pa. 2009). Thus, the following aspects of the 2021 Sustainability Report would be insufficient evidence to support a finding of JCI PLC's purposeful availment: efforts to collect data regarding workplace safety, regular safety auditing processes, health and safety reports from each subsidiary, and software to report and track work-related injuries.

Moreover, regulatory filings presenting information about a parent's subsidiaries as one indistinguishable whole do not prove agency, and thus would not establish a finding of personal jurisdiction. *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017). "For the same reasons, [the Parent] setting the corporate policies and procedures for all subsidiaries is not sufficient evidence of agency" and would also not support a finding of personal jurisdiction. *Id.* Thus, the remaining factors would be insufficient evidence to support a finding of JCI PLC's purposeful availment: global initiatives for safe working conditions, the use of standard US-OSHA recordkeeping rules, company-wide policies that are supported by local, regional, and site-specific employee health and safety, training requirements, and safety committees used to ensure safe working conditions at local facilities. Thus, the 2021 Sustainability Report fails to

provide sufficient evidence to establish JCI PLC's purposeful availment in York, Pennsylvania.

Unlike the 2021 Sustainability Report, Mahone does not point to any specific aspects of the 2022 Non-Financial Disclosure Report that could constitute purposeful availment by JCI PLC.  Mahone merely mentions the 2022 Non-Financial Disclosure Report once by name while describing the "Zero Harm" safety policy.  (Doc. 39, p. 3.)  As was previously established, the Zero Harm policy is insufficient evidence to establish JCI PLC's purposeful availment in York, Pennsylvania.

Additionally, the court notes that the Accident occurred in October 2021. The Third Circuit has previously held that the purposeful availment requirement "necessary implies that only conduct prior to the accrual of the cause of action or, at the very latest, the filing of the lawsuit is relevant."  *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 312 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012).  Thus, a 2022 report is insufficient to establish purposeful availment for specific personal jurisdiction for this reason as well.

### vi.    JCI PLC Visit to York Facility

Finally, Mahone alleges that JCI PLC physically entered Pennsylvania in 2018 when officers of JCI PLC visited the York Facility where the Accident occurred.  (Doc. 39, p. 11; Doc. 39-9, p. 36.)  Given that physical entrance is

22

satisfied with this fact, it is likely this instance satisfies "deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317.  However, the court must assess whether this singular visit three years prior to the Accident satisfies the second prong regarding whether the claim arose out of or related to this visit, which will be further explored next.

### 2.  Claim Arises Out of or Relates to Defendant's Contacts

The second part of the specific personal jurisdiction analysis examines whether the litigation arises out of or directly relates to one of the activities the defendant purposely directed at the forum.  *O'Connor*, 496 F.3d at 317.  Mahone cites six instances of alleged purposeful availment, all of which were analyzed in the previous section.  Of the six alleged, the first three reasons do not satisfy step one and therefore will not be analyzed in step two.

And, even if we assume the next two claims–online job postings and corporate statements directed towards the York Facility–satisfy the first step, they still fail the second requirement for establishing specific personal jurisdiction.  Online job postings relate more to the human relations function of an organization rather than safety policies that would have directly related to the Accident.  *Reynolds v. Turning Point Holding Co., LLC*, No. 2:19-CV-01935-JDW, 2020 U.S. Dist. LEXIS 33163, at *12 (E.D. Pa. 2020).  Even if the online job postings related to the Accident in some way, they still would not give rise to specific

personal jurisdiction because there is no evidence that Raul was hired via these online job postings.  Thus, the alleged harm did not flow from these hiring procedures and could not therefore be used as evidence that the Accident arose out of or related to these job postings.  *Id.*

Likewise, the consolidated corporate statements were simply a way for the parent company to monitor its subsidiaries' performance through key performance indicators and various reports.  (Doc. 39-9, p. 16.)  While these statements may have contained a report on the Accident at the York Facility, they were merely a part of the environmental health and safety oversight that was routinely included in these consolidated statements.  (Doc. 39-9, p. 21.)  Simply mentioning the Accident in a routine, global report issued to all subsidiaries is not sufficient to establish the second prong required in the analysis for specific personal jurisdiction.

JCI PLC's visit to the York Facility is the only instance that clearly satisfies the first prong; however, it is not sufficient to meet the relatedness prong.  The visit in question occurred approximately three years before the Accident and was the only time JCI PLC maintained physical presence at the York Facility.  (Doc. 39, p. 2.)  Mahone claims that the visit was to create an operational review of the York Facility.  *Id.*  However, jurisdictional discovery revealed that this visit instead consisted of a Chiller/Airside presentation and tour of the York Facility, neither of

which related to the Accident.  (Doc. 38-6, p. 3.)  Accordingly, Mahone has failed to establish how the claim arises out of or relates to JCI PLC's visit in 2018 such that this court may exercise jurisdiction over JCI PLC.

CONCLUSION

For the above reasons, the motion to dismiss is granted on the ground that the court lacks personal jurisdiction over Defendant JCI PLC, and the claims against JCI PLC are dismissed with prejudice.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: May 12, 2025